**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jesus Jose LOZOYA–MORALES and Frederico Borrego Sanchez, Defendants–Appellants.**

**Nos. 90–2380 and 90–2381.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1990.

Decided May 10, 1991.

Jeffrey Anderson, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Alexander M. Salerno, Stevenson & Salerno, Palos Heights, Ill., Edmund P. Wanderling, Stickney, Ill., for defendants-appellants.

Before COFFEY and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The appellants Jesus Morales ("Morales") and Frederico Sanchez ("Sanchez") appeal their convictions and sentences for distribution and conspiracy to distribute cocaine, *see* 21 U.S.C. §§ 841(a)(1) and 846. We must decide whether sufficient evidence supports their convictions, and whether the District Court erred by increasing their offense category under § 3C1.1 of the Federal Sentencing Guidelines ("Sentencing Guidelines") by two levels for willful obstruction of justice. We affirm the convictions and Morales' sentence. Because the jury's verdict does not conclusively establish the falsity of Sanchez's testimony and because the District Court made no independent finding that Sanchez had lied on the witness stand we vacate Sanchez's sentence and remand to Judge Crabb for resentencing.

*Factual Background.*

This is a cocaine conspiracy case arising from an undercover government sting operation. With Morales and Sanchez, the indictment named a third co-conspirator, Darryl Stout ("Stout"). Stout is the person who actually made the deliveries of cocaine to undercover authorities. The indictment alleged one count of conspiracy and two counts of distribution against all of the defendants, and two additional counts of distribution against Stout and Morales. Stout cooperated with authorities, pleaded guilty to one count of distribution of cocaine, and testified against Morales and Sanchez at the trial below.

Morales and Sanchez conceded at trial that if the jury believed Stout's testimony, a guilty verdict on all counts would necessarily follow. But the appellants challenged Stout's credibility, pointing out to the jury that much of his testimony was uncorroborated by government surveillance officers. The jury apparently did not believe everything to which Stout had testified because it acquitted both Morales and Sanchez of one count each of distribution. However, the jury did not entirely reject Stout's testimony because it convicted the appellants on the remaining counts.

Both Morales and Sanchez testified on their own behalf at trial. Morales denied his involvement in the alleged conspiracy. Sanchez denied that he had ever handed drugs to Stout for delivery to the undercover officers. The District Court explicitly found that Morales had lied during his testimony and increased his offense category under the Sentencing Guidelines by two levels for willful obstruction of justice. *See* § 3C1.1.[1] The District Court also adjusted Sanchez's sentence under § 3C1.1, but made no specific finding that Sanchez had lied in his trial testimony. Rather, the record indicates that Sanchez's adjustment was based on the jury's guilty verdict. Both Morales and Sanchez have appealed their convictions as unsupported by sufficient evidence and their sentences as being improperly adjusted under § 3C1.1.

*Sufficiency of the Evidence.*

■ The challenges to the sufficiency of the evidence are without merit. Morales and Sanchez concede that Stout's testimony, if believed by the jury, supports their convictions. They argue that the jury *could not* have believed this testimony because Stout is an inherently incredible wit-

1.   If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.
Sentencing Guidelines § 3C1.1.

ness. But "[t]o be incredible as a matter of law, a witness' testimony must be unbelievable on its face. In other words, it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all. Mere inconsistencies in the witness' testimony do not render it legally incredible." *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989) (citations omitted). Stout's testimony is not unbelievable on its face. We leave the credibility determination to the jury and affirm the convictions because Stout's testimony supports the jury's verdict.

*Sanchez' Sentence.*

■ Sanchez contends that adjustment of his sentence for obstruction of justice was an improper application of the Sentencing Guidelines. We will affirm the District Court's sentence if we find it is the result of a correct application of the Sentencing Guidelines to facts not found to be clearly erroneous. *United States v. Jordan*, 890 F.2d 968, 972 (7th Cir.1989). When a sentence is adjusted for obstruction of justice, the factual finding that the defendant willfully obstructed justice is reviewed under the clearly erroneous standard. However, we review *de novo* the District Court's legal interpretation of the Sentencing Guidelines. *See United States v. Teta*, 918 F.2d 1329, 1332 (7th Cir.1990). The question before us involves a legal interpretation of the Sentencing Guidelines requiring *de novo* review.

■ In his trial testimony, Sanchez denied having ever given cocaine to Stout to distribute to the undercover officers. After the jury returned a guilty verdict, the District Court explained the obstruction of justice assessment in this case:

> [Y]our argument is that anytime a defendant takes the stand and is found guilty, that he'll be found to have perjured himself. It may very well be true, but I'm not sure that there's anything wrong with that. If a defendant gets up on the stand and gives a story that the jury does not believe, the jury is finding that he is not telling the truth.
>
> \* \* \* \* \* \*
>
> I'm punishing him for testifying untruthfully. The jury found that he testified untruthfully because they believed that he had in fact been involved in the distribution of cocaine.

Transcript of Sanchez Sentencing at 10, 11. Neither this statement nor any other portion of the record indicates that the District Court made an independent factual finding that Sanchez had committed perjury in his trial testimony. Rather, it appears that the obstruction of justice adjustment is based entirely upon the jury's verdict. And at oral argument in this Court, the United States conceded that nothing in the jury verdict *necessarily* establishes the falsity of Sanchez's testimony.[2]

**2.** The Court: In your view, what was the untruthful testimony?

United States: The untruthful testimony of Mr. Sanchez?

The Court: That is, the testimony that was necessarily established by the jury's verdict. Because the judge made no independent findings, you're really arguing the estoppel effect of the jury verdict.

United States: At page 18 of my brief, I outline, "Now, when Mr. Stout got into your automobile that night, did you give him anything? No. Did Mr. Stout ever show you anything? Did he ever show you drugs? No. No. He didn't show me anything. Do you know what cocaine is? Well, I've heard of it. Not that I know exactly what it is. Did Mr. Stout ever show you a bag with maybe some white powder in it? I never saw anything in his hand."

And then the next question, "Is it your testimony that you just happened to run into Darryl Stout on September 14, 1989? Exactly." And it's the Government's position that those are material falsehoods and that the Court correctly enhanced the penalty by two levels for those.

The Court: Well, I'm asking a different question. I'm not asking whether in your view they are material falsehoods. I'm asking whether their falsity is conclusively established by the jury verdict. The charge is possession of cocaine with intent to distribute and conspiracy to distribute cocaine. Presumably, you could be guilty of both of those charges by dealings between Morales and Sanchez without actually handing anything to Mr. Stout. So the jury's conviction does not establish that Sanchez handed anything to Mr. Stout, right?

The adjustment here, absent an independent finding by the District Court that Sanchez lied, is improper. In our view, the District Court, based upon its observations of Sanchez's testimony and other evidence, must independently determine whether the defendant lied on the witness stand. Imposing the penalty automatically from a jury verdict that concededly does not establish the defendant lied in his testimony impinges upon the right to testify in one's behalf.

Our conclusion accords with the Supreme Court's pre-Sentencing Guidelines opinion from which § 3C1.1 is born. *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). The Court, while recognizing that the criminally accused do possess the right to testify, held that this right is not impermissibly chilled when the sentencing judge imposes a stiffer sentence based upon the judge's determination that the defendant committed perjury. But *Grayson* does not give a wholesale right to adjust every time a jury returns a guilty verdict after a defendant has testified. The Supreme Court was very concerned that defendants would hesitate to testify if they were worried their sentence would be thereby increased following a guilty verdict.

> Grayson's further argument that the sentencing practice challenged here will inhibit exercise of the right to testify truthfully is entirely frivolous. That argument misapprehends the nature and scope of the practice we find permissible. Nothing we say today requires a sentencing judge to adjust, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand [and] determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, ... Awareness of such

a process realistically cannot be deemed to affect the decision of an accused but unconvicted defendant to testify truthfully in his own behalf.

*Grayson,* 438 U.S. at 55, 98 S.Ct. at 2618.

In basing Sanchez's adjustment solely upon the jury verdict, the District Court acted in the "wooden or reflex fashion" that is not authorized by *Grayson.* Sanchez testified and the jury found him guilty, but the jury's verdict in this case says nothing about whether Sanchez lied. To enhance the sentence simply because the defendant testified—without a finding by the judge that he lied about a material subject, or the clear implication of the jury's verdict that he must have done so—is to punish the testimony *simpliciter,* which raises grave constitutional problems. *Cf. United States v. Husky,* 924 F.2d 223, 224–25 (11th Cir.1991) (affirming adjustment because the District Court made an independent finding); *United States v. Beaulieu,* 900 F.2d 1531, 1536 (10th Cir. 1990), *cert. den.,* —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990) (same); *United States v. Martinez,* 922 F.2d 914, 926 (1st Cir.1991) (rejecting appeal by the Government requesting adjustment simply because the jury returned a guilty verdict for a defendant who had testified).

We therefore must vacate Sanchez's sentence and remand for resentencing. Nothing we have said prevents the District Court from independently finding that Sanchez lied and thereby enhancing Sanchez's sentence on remand. But the adjustment in this case may not rest upon the jury verdict alone.

We also strongly urge district courts in other cases where a sentence is to be increased because of a defendant's trial testimony to make the independent finding that we have required here. When a judge enhances the sentence under § 3C1.1 on the basis of trial testimony, and does not make an independent finding that the defendant

United States: Correct.
The Court: So the question is what was it that was established by the jury's verdict that in your view conclusively establishes the falsity of the testimony? Now maybe what you want to do is point to the one that says, "I don't know what cocaine is." Now the jury's ver-

dict certainly establishes the falsity of that statement.
United States: I can't argue anything further. I mean we are kind of limited to that. And I agree that the jury's verdict does not address those critical issues.

told a material lie on the stand, we will insist that the record clearly demonstrate that the jury *must* have found such a falsehood. Ambiguities we shall resolve against the sentence. Appearances can be deceiving. Many times, a jury verdict at first blush appears to be necessarily inconsistent with the defendant's testimony, but a more searching review reveals, as in this case, that the verdict does not establish that the defendant perjured himself. When this occurs, only the sentencing court's independent finding of a willful falsehood will prevent us from vacating a § 3C1.1 adjustment.

*Morales' Sentence.*

■ Morales raises the same challenge to his obstruction of justice adjustment that Sanchez did. But Morales' appeal stands upon a different footing. The District Court made a factual determination independent from the jury's verdict that Morales had committed perjury: "I believe that if you get up on the stand and lie about your involvement, that that is an obstruction of justice and I believe that Mr. Morales did lie about his involvement." Transcript of Morales Sentencing at 5. This factual finding is not clearly erroneous and the District Court correctly adjusted under § 3C1.1.

Both convictions and Morales' sentence are AFFIRMED but Sanchez's sentence is REVERSED and REMANDED for resentencing.