**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael J. TROKA, Defendant–**
**Appellant.**

No. 92–2372.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 3, 1993.

Decided March 8, 1993.

D. Michael Rickgauer (argued), Reardon, Orr & Dvorak, East Peoria, IL, for Michael J. Troka.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

We affirm Michael Troka's conviction and his sentence for illegal possession of handgun, 18 U.S.C. § 922(g).

## I.

On July 31, 1991, Deputy Rodger Linsey of the Fulton County (Illinois) Sheriff's Department received a telephone call from the Canton, Illinois Police Department. The Canton Police Department warned that Michael Troka could attempt to kill Roger Malott, a resident of Fulton County. Linsey shared this information with Sergeant Curtis Pierce, who knew that Malott frequented D.J.'s Tavern in Table Grove, Illinois.

Later that day, Linsey, Pierce, and Deputy James Kumer heard that Troka was causing a disturbance in D.J.'s Tavern. On their way to D.J.'s, the three deputies heard that Troka and a woman had left the bar in a blue sedan. Kumer, who was closest to the bar, called Pierce requesting further instructions, and Pierce asked Kumer to stop Troka. When Kumer saw a blue Ford Tempo carrying a man matching Troka's description, he stopped the car.

Shortly after the stop, Linsey and Pierce arrived at the car, and they found an open container of alcohol and a pouch of marijuana. The deputies then ordered an inventory search, which produced a handgun. After Troka admitted to possessing the gun, he was charged with being a felon in possession of a handgun. 18 U.S.C. § 922(g).

Before his trial, Troka filed a motion to quash, alleging that the deputies had illegally stopped him. The district court denied the motion to quash, and Troka proceeded to trial. At trial Troka recanted his confession, claiming that he had never seen the handgun before his arrest. Troka was,

Bradley W. Murphy, Asst. U.S. Atty., Office of the U.S. Atty., Peoria, IL, Byron G. Cudmore, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Springfield, IL, for U.S.

nonetheless, convicted of illegal possession of a handgun.

In Troka's presentence report, the Probation Department recommended an enhancement for the obstruction of justice. U.S.S.G. § 3C1.1. The Department explained:

> Following the defendant's arrest, he engaged in several telephone conversations which were taped by law enforcement officials. On August 7, 1991, he had a conversation with Randy Mustread through the DEA undercover line. During the course of the conversation, the defendant acknowledged that he had picked up the gun the day before his arrest. When he testified at his trial, he stated that he did not know where the gun came from and that he had never seen it before. The defendant committed perjury, and accordingly, the offense level is increased by two levels as he obstructed justice.

At Troka's sentencing hearing, the district court explicitly adopted the Department's finding and enhanced Troka's offense level by two points for obstructing justice. Troka now appeals from both his sentence and his conviction.

## II.

### A. The Stop

■ Troka argues that the police seized the gun after an illegal traffic stop. The district court rejected this claim, finding the stop justified as either a *"Terry"* investigatory stop or a stop based on probable cause. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This court reviews such findings for clear error. *United States v. Spears*, 965 F.2d 262, 269 (7th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992); *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990).

■ We agree with the district court that the deputies performed a valid *Terry* stop. An officer may make a *Terry* stop "when [he] has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity."

*United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). An officer has "reasonable suspicion" for a search where he "reasonably [concludes] in light of his experience that criminal activity may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. He may not, however, rest only upon his intuition; the officer must provide "specific" and "objective" facts justifying the stop. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880.

Numerous cases have discussed when a tip from an informant may justify a *Terry* stop. In *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), for example the Supreme Court allowed a stop without any corroboration after "a credible informant warn[ed] of a specific impending crime." In *United States v. Ocampo*, 890 F.2d 1363 (7th Cir. 1989), this court also allowed a stop after a tip from a reliable informant. We held that the officers had sufficiently corroborated the tip because they had observed Ocampo conduct what appeared to be "counter-surveillance techniques" and had noticed that he used equipment traditionally possessed by drug traffickers. *Id.* at 1368.

■ The deputies in Troka's case made an even stronger showing of reasonable suspicion than the officers in *Adams* and *Ocampo*. Before ordering the stop, Sergeant Pierce learned from another police department that Troka wanted to kill Roger Malott. Pierce did not need to inquire into the primary sources of this information because the police department was a reliable source and because later information provided further corroboration for the tip. After learning that Troka had caused a disturbance in D.J.'s, a bar frequented by Malott, Pierce could have reasonably suspected that criminal activity was afoot. Once Sergeant Pierce possessed such reasonable suspicion, he properly ordered Deputy Kumer to execute the stop. "[W]hen officers are in communication with each other while working together at a scene, their knowledge may be mutually imput-

ed...." *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir.1992).

## B. *The Obstruction of Justice Enhancement*

 Troka also challenges the district court's sentencing enhancement for the obstruction of justice. U.S.S.G. § 3C1.1. Section 3C1.1 of the Guidelines reads:

> If the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

The Commentary to § 3C1.1 discusses the conduct amounting to an obstruction of justice, including "committing, suborning, or attempting to suborn perjury."

Troka claims that the district court imposed the enhancement without specifically finding that he had committed perjury or otherwise obstructed justice. In support of his position, Troka cites *United States v. Lozoya–Morales*, 931 F.2d 1216 (7th Cir. 1991). Like Troka, the defendant in *Lozoya–Morales* was convicted after testifying on his own behalf at trial. *Id.* at 1218. At his sentencing hearing, the district court imposed the obstruction of justice enhancement, without making an independent finding of perjury. The court instead explained:

> The jury found that he testified untruthfully because they believed that he had in fact been involved in the distribution of cocaine.... If a defendant gets up on the stand and gives a story that the jury does not believe, the jury is finding that he is not telling the truth.

*Id.* After reviewing these findings, we reversed, holding: "[w]hen a judge enhances the sentence under § 3C1.1 on the basis of trial testimony, and does not make an independent finding that the defendant told a material lie on the stand, we will insist that the record clearly demonstrate that the jury *must* have found such a falsehood." *Id.* at 1220 (emphasis in original).

In Troka's case, we need not address whether the jury's verdict contradicted his testimony because the district court made an independent finding of an obstruction. As we recently held in *United States v. Kaufmann*, 985 F.2d 884, 899–900 (7th Cir. 1993), a court may discharge its duty to make factual findings by adopting the findings contained in a presentence report. By adopting the position of the Probation Department, the court found that Troka had committed perjury. *Id.; United States v. Shetterly*, 971 F.2d 67, 77 (7th Cir.1992).

## III.

For the foregoing reasons, Troka's conviction and sentence are AFFIRMED.